NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

May 17, 2021

Linda D. Foster, Esq.
Office of the Federal Public Defender
972 Broad Street
Newark, NJ 07102
*Counsel for Defendant*

Jason Scott Gould, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** *United States v. Young*
**Criminal Action No. 17-413 (SDW)**

Counsel:

Before this Court is Defendant Jakill Young's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). This Court, having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

## DISCUSSION

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *see also Dillon v. United States*, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

1

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction."[1] *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (internal quotations omitted).

B.

On May 10, 2018, Defendant pleaded guilty to a one-count Indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (D.E. 17, 18.) This Court sentenced Defendant to 78 months' imprisonment and three years of supervised release on November 8, 2018. (D.E. 24.) Defendant is currently incarcerated at the Federal Correctional Institute Schuylkill ("FCI Schuylkill") in Pennsylvania. BOP, Find An Inmate (May 14, 2021, 11:00 A.M.), www.bop.gov/inmateloc/. Defendant's projected release date is January 11, 2023. *See id.*; (D.E. 28 at 3; D.E. 29 at 3.)

On May 18, 2020, Defendant filed a request for compassionate release with the Warden at FCI Schuylkill. (D.E. 27 at 3.) Defendant's request was denied on June 10, 2020. (*Id.* at 4–5.) In March 2021, Defendant filed the instant motion for compassionate release approximately one month after testing positive for COVID-19. (D.E. 28; *id.* at 3, 6.) The Government opposed the Motion on May 4, 2021. (D.E. 29.) It is undisputed that Defendant exhausted his administrative remedies by requesting compassionate release from FCI Schuylkill's Warden more than thirty days before filing the instant Motion. (D.E. 29 at 8.) Thus, the Motion is ripe for judicial review.

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

Defendant contends that his release is warranted because he suffers from obesity, asthma, prediabetes, and has low white blood cells, which, when coupled with the COVID-19 pandemic and confinement at FCI Schuylkill, constitute "extraordinary and compelling reasons" under the FSA. (D.E. 28 at 2–6.) Defendant also asserts that a sentence reduction is sufficient but not greater than necessary to fulfill sentencing goals pursuant to 18 U.S.C. § 3553(a) ("Section 3553(a)"). (*Id.* at 25–27.) The Government disputes the existence of Defendant's purported medical conditions apart from his prediabetes. (D.E. 29 at 1, 10–11.)

C.

Although this Court is sympathetic to Defendant's various health concerns, particularly through the lens of the COVID-19 pandemic, they do not amount to extraordinary and compelling reasons, individually or in combination, to warrant release under the FSA. *See Epstein*, 2020 WL 1808616, at *2. After the COVID-19 pandemic reached the United States in early 2020, federal courts across the country have addressed COVID-19-based requests for compassionate release by citing to the Centers for Disease Control and Prevention's ("CDC") published lists on certain medical conditions that could exacerbate severe illness from COVID-19. *See, e.g.*, *United States v. Mann*, Crim. No. 16-380, 2021 WL 1851902, at *3 (D.N.J. May 7, 2021) (collecting cases). As of May 13, 2021, the CDC lists health conditions that can make it "more likely" for "[a]dults of any age" "to get severely ill from COVID-19."[2] *See* CDC, People with Certain Medical Conditions (May 14, 2021, 11:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

With respect to Defendant's specific health conditions, the CDC indicates that overweight or obese individuals, as well as individuals with "moderate to severe asthma," can be "more likely to get severely ill from COVID-19." *Id.* Even assuming defense counsel correctly computed Defendant's body mass index ("BMI") of 30.4—a calculation the Government disputes—he falls under the CDC's "obese" category by a small margin.[3] (*Compare* D.E. 28 at 3, *with* D.E. 29 at 10.) Courts have denied motions for compassionate release to defendants with higher BMIs when there is no apparent inability to lose weight, insufficient health care, or a demonstrated inability to provide self-care. *See, e.g.*, *United States v. Cherry*, Crim. No. 09-715, 2020 WL 5868800, at *2 (D.N.J. Oct. 2, 2020) (denying release where defendant had a BMI between 30 and 33); *United States v. Bleicher*, Crim. No. 19-99, 2020 WL 2744606, at *3 (D.N.J. May 27, 2020) (denying compassionate release for a defendant with a BMI of 37.7). Similarly, Defendant's purported asthma is suspect based on this Court's review of his medical records. (*See* Def.'s Ex. B at 2, 5 (noting "[n]o . . . [h]istory of asthma" in February 2021); 60, 66, 72).) Although one medical note from February 2021 reflects that Defendant requested an inhaler refill and had asthma as a child, the record also indicates that the BOP addressed Defendant's request, stating that he did not receive

---

[2] In the context of individuals with COVID-19, the CDC's definition of "severe illness" means possibly needing "[h]ospitalization, [i]ntensive care, [or] [a] ventilator." CDC, People with Certain Medical Conditions (May 14, 2021, 11:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. "Severe illness" may also result in death. *See id.*

[3] As defined by the CDC, an "overweight" individual's BMI is greater than 25 but less than 30, while an "obese" individual's BMI is greater than or equal to 30 but less than 40. CDC, People with Certain Medical Conditions (May 14, 2021, 11:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

chronic care for asthma and had "no acute distress" or wheezing. (*Id.* at 7.) Even assuming Defendant's concerns regarding asthma are legitimate, it does not serve as a basis for compassionate release. *See United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *4 (D.N.J. July 13, 2020) (denying compassionate release because defendant's prison was adequately treating his "relatively mild" asthma); *United States v. Zaffa*, Crim. No. 14-50-4, 2020 WL 3542304, at *2 (D.N.J. June 29, 2020) (same). Accordingly, Defendant's borderline obesity and asthma do not amount to extraordinary and compelling reasons to justify release.

Defendant's remaining ailments—low white blood cells and prediabetes—are not comorbidities listed by the CDC that make it "more likely" for an individual "to get severely ill from COVID-19." *See* CDC, People with Certain Medical Conditions (May 14, 2021, 11:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.[4] Although Defendant's prediabetes is reflected in his medical records (*see, e.g.*, Def.'s Ex. B at 8, 16, 21), Defendant failed to cite documentation that reflects his low white blood cell count—nor did this Court locate any notations in the medical record. (*See* D.E. 28.) Nonetheless, consistent with other courts that have denied compassionate release to inmates with similar or more serious medical conditions, Defendant's purportedly low white blood cell count and prediabetes do not amount to extraordinary or compelling reasons warranting his release. *See United States v. Rose*, Crim. No. 11-10062, 2020 WL 6550573, at *1 (D. Mass. Nov. 6, 2020) (denying compassionate release to defendant who presented with a low white blood cell count, prediabetes, and high blood pressure); *United States v. Ellis*, Crim. No. 13-145S, 2020 WL 6063840, at *3–4 (S.D. Ind. Oct. 14, 2020) (denying an inmate's motion for compassionate release despite his diagnoses of leukopenia and thrombocytopenia); *see also United States of Am. v. Rosa*, Crim. No. 16-459-01, 2021 WL 487048, at *3 (D.N.J. Feb. 10, 2021) (finding no justification for release based on defendant's prediabetes, high blood pressure, and hyperlipidemia).

Furthermore, despite Defendant's claimed medical conditions, he has contracted and recovered from COVID-19 without suffering serious illness. (D.E. 28 at 6.) Courts in this District routinely deny compassionate release to inmates who have contracted and subsequently recovered from COVID-19. *See, e.g.*, *United States v. Reed*, Crim. No. 13-787-03, 2021 WL 631921, at *2–3 (D.N.J. Feb. 18, 2021) (denying motion for compassionate release where defendant "ha[d] already been infected with and recovered from COVID-19 without suffering severe illness"); *United States v. Bell*, Crim. No. 15-603, 2021 WL 303009, at *2–3 (D.N.J. Jan 29, 2021) (holding that defendant's fear of reinfection "d[id] not constitute extraordinary and compelling reasons warranting a grant of compassionate release"); *United States v. Warner*, Crim. No. 13-782, 2021 WL 71588, at *3–4 (D.N.J. Jan. 8, 2021) (denying motion for compassionate release where defendant did not show symptoms while infected with COVID-19 even though defendant's medical conditions could have otherwise presented an "extraordinary and compelling" reason). Defendant's risk of reinfection is minimized further because there are no current COVID-19 cases amongst inmates or staff at FCI Schuylkill. *See* BOP, COVID-19 Cases (May 14, 2021, 11:00

---

[4] Although low white blood cells are contributing factors to some primary immune deficiency diseases as defined by the National Institute of Allergy and Infectious Diseases ("NIAID"), Defendant does not claim to suffer from any immunocompromised diseases (*see generally* D.E. 28). *See* CDC, People with Certain Medical Conditions (May 14, 2021, 11:00 A.M.), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (linking to NIAID, Types of Primary Immune Deficiency Diseases (May 14, 2021, 11:00 A.M.), https://www.niaid nih.gov/diseases-conditions/types-pidds).

A.M.), https://www.bop.gov/coronavirus/ (noting that 548 inmates and 73 staff members have recovered from COVID-19 and reporting no COVID-19 deaths in either population).  Moreover, Defendant's decision to decline Pfizer's COVID-19 vaccine offered to him in March 2021 weighs against his request for release.  (*See* D.E. 29 at 13); *see, e.g.*, *United States v. Byrd*, Crim. No. 14-699-09, 2021 WL 929726, at *3 (D.N.J. Mar. 11, 2021) (denying compassionate release and noting that defendant "was offered the vaccine but refused it"); *United States v. Porfirio Lobo*, Crim. No. 15-174-01, 2021 WL 603267, at *3–4 (S.D.N.Y. Feb. 12, 2021) (finding no extraordinary or compelling reason for defendant's release which was "bolstered by" his refusal of the Moderna COVID-19 vaccine "for unspecified reasons").

Finally, the sentencing factors pursuant to Section 3553(a) act as an independent bar to Defendant's request.  Should Defendant's sentence be reduced, this Court must ensure that his sentence still reflects the seriousness of the offense.  *See* 18 U.S.C. § 3553(a).  Here, it cannot be understated that Defendant unlawfully possessed a firearm as a convicted felon and was apprehended shortly after shooting an unknown individual who fortunately survived.  (D.E. 22 at 17:4–17.)  Defendant's prior drug-related convictions are relevant as well.  (*See id.* at 9:15–17; 14:17–19.)  For these reasons, this Court is satisfied that a sentence reduction would not deter additional criminal activity, "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment."  *See* 18 U.S.C. § 3553(a)(2)(A).  Nor would it be appropriate considering "the nature and circumstances of [Defendant's] offense and [his] history and characteristics."  18 U.S.C. § 3553(a)(1); *see Pepper v. United States*, 562 U.S. 476, 480 (2005) (explaining that sentencing courts "must consider . . . the history and characteristics of the defendant").  A sentence reduction would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

## **CONCLUSION**

Defendant's Motion for Compassionate Release is **DENIED**[5] without prejudice.  An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties

---

[5] Defendant suggests that this Court may place him on home confinement.  (D.E. 28 at 2, 23.)  Although this Court may issue a recommendation to the BOP, it does not have the authority to order home confinement.  *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the [BOP] at any time").  For the reasons stated above, this Court declines to issue a recommendation at this time.